UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN H., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:18-cv-02586-TWP-MPB |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff John H.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

### I. PROCEDURAL BACKGROUND

On March 9, 2015, John H. protectively filed an application for DIB, alleging a disability onset date of August 1, 2014. (Filing No. 8-2 at 16.) His application was initially denied on May 26, 2015, (Filing No. 8-4 at 2), and upon reconsideration on September 17, 2015, (Filing No. 8-4 at 8). Administrative Law Judge Monica LaPolt (the "ALJ") conducted a hearing on July 6, 2017, at which John H., represented by counsel, and a vocational expert ("VE"), appeared and testified. (Filing No. 8-2 at 34-63.) The ALJ issued a decision on October 27, 2017, concluding that John H. was not entitled to receive benefits. (Filing No. 8-2 at 13.) The Appeals Council denied review

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

on June 23, 2018. ([Filing No. 8-2 at 2](#).) On August 22, 2018, John H. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying his benefits. ([Filing No. 1](#).)

## II. STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id*. (citation omitted).

### III. FACTUAL BACKGROUND

John H. was 59 years of age at the time he filed for DIB, (Filing No. 8-5 at 2), alleging he could no longer work because of tremors, early onset Parkinson's disease, ringing in his right ear, degenerative disc disease, a tailbone injury, and pain in his heels (Filing No. 8-6 at 3.) He has completed his general equivalence diploma and has worked as a laborer in construction. (Filing No. 8-6 at 104). In May 2013, John H. was awarded service-connected disability compensation from the Veteran's Administration ("VA"), with an eighty percent full body disability rating, for Parkinson's disease with upper extremity tremors, mild cognitive impairment or dementia, moderate sleep disturbance, and tinnitus. (Filing No. 8-2 at 24.) Additionally, he has worked in other occupations besides in construction, including as a furniture salesman.[2] (Filing No. 8-2 at 27.)

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that John H. was not disabled. *Id*. At step one, the ALJ found that John H. had not engaged in substantial gainful activity[3] since August 1, 2014, the

---

[2] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

alleged onset date. (Filing No. 8-2 at 18.) At step two, the ALJ found that he had a severe impairment: degenerative disc disease. *Id*. At step three, the ALJ found that John H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 8-2 at 21.) After step three but before step four, the ALJ concluded that "[a]fter careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs; and frequent balancing, stooping, kneeling, crouching, or crawling. (Filing No. 8-2 at 22.) At step four, considering John H.'s RFC and the VE's testimony, the ALJ concluded that John H. was capable of performing his past relevant work as a furniture sales man, both as he actually performed the job and as it is generally performed in the national economy. (Filing No. 8-2 at 26-27.)

## IV. DISCUSSION

John H. raises two assignments of error, that the ALJ failed to: (1) consider the evidence of record pertaining to John H.'s carpal tunnel syndrome after the ALJ determined that it was not a severe impairment, and (2) follow SSR 16-3p in assessing John H.'s subjective symptoms. The Court will address the issues in turn.

**A.      Carpal Tunnel Syndrome**

At step two, the ALJ found that John H. did not have any severe hand-related impairment. (Filing No. 8-2 at 19.) The ALJ noted that John H. intermittently discussed problems with pain and tingling in his bilateral hands. *Id*. The ALJ discussed a plastic surgery consultation with the VA that John H. had attended prior to his alleged onset date. *Id*. The ALJ explained that "some clinical deficits" had been found, but there had not been objective findings to fully explain John H.'s symptoms. *Id*. On July 8, 2013, a nurse practitioner performed the consultation, reviewed

5

the results of recent electromyography testing, and examined John H.'s hands. (Filing No. 8-7 at 80-81.) The nurse practitioner assessed "bilateral hand pain and paresthesia," and discussed with John H. the pathophysiology of carpal tunnel syndrome, noting "concern that [patient's] symptoms [did] not match." (Filing No. 8-7 at 81.) The ALJ noted that John H. was treated conservatively and that he did not discuss issues with his hands during the majority of the period at issue, but he renewed his complaints in December 2016. (Filing No. 8-2 at 19.)

The Court does not find that the ALJ ignored the evidence related to carpal tunnel syndrome at the subsequent steps of the sequential evaluation process. "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010) (citing 20 C.F.R. § 404.1523; *see Golembiewski v. Barnhart,* 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.")). "Therefore, the step two determination of severity is 'merely a threshold requirement.'" *Castile*, 617 F.3d at 927 (quoting *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir. 1999)). Here, as noted above, the ALJ found that John H. had a severe, physical impairment – degenerative disc disease. Accordingly, the ALJ assessed an RFC to be considered at the later steps, including notably at step four.

The ALJ confronted the relevant evidence of record identified by John H., (Filing No. 10 at 13), when the ALJ explained her RFC finding, in part, by discussing the results of the two physical, consultative examinations that John H. had attended at the request of the SSA, (Filing No. 8-2 at 23-24). At the first consultative examination, on May 11, 2015, John H. had "[g]ood fist and claw, good finger to thumb coordination," his "[g]rip strength was normal at 5/5 bilaterally

and fine finger skills [were] normal," and he had "the ability to pick up a coin and button a shirt." ([Filing No. 8-7 at 119](#).)  At the second, on August 10, 2015, John H.'s "[g]rip strength [was] subjectively assessed as abnormal at 4/5 bilaterally," and his "[f]inger abduction [was] 4/5 bilaterally."  ([Filing No. 8-7 at 130](#).)  The examiner assessed John H. to have carpal tunnel syndrome, noting in support his weakened grip strength.  *Id*.  The ALJ discussed the decreased grip strength and finger abduction, but also noted that John H.'s sensation was intact, and he was able to fully close all fingers into a fist and button clothing utilizing both hands.  ([Filing No. 8-2 at 24](#) (citing [Filing No. 8-7 at 130](#)).)  The consultative examiner's "medical source statement" did not offer an opinion as to John H.'s functional limitations based on the findings of the examination. (*See* [Filing No. 8-7 at 131](#).)

The ALJ explained her conclusion that John H.'s alleged symptoms were not completely consistent with the evidence of record by specifying, in relevant part, that "[n]o medical source of record appreciated evidence of muscle atrophy, documented weakness in the upper or lower extremities, noted problems with the claimant's gait, or indicated problems with fine manipulative abilities."  ([Filing No. 8-2 at 27](#).)  As noted above, the consultative examiner assessed that John H.'s grip strength was subjectively decreased, but functional testing of his ability to use his hands—including for fine manipulation—was preserved.  John H. does not present any evidence of record that a medical source assessed any further limitations—relevant to the impairment or generally—than those included in the ALJ's RFC finding.  Relying on a published decision, the Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).  VE testimony did establish that if an individual were limited to "occasional handling," the individual would not be able to perform John

H.'s past relevant work, as actually or generally performed. (Filing No. 8-2 at 61.) However, John H. did not meet his burden to establish with medical evidence that his severe impairment resulted in that degree of limitation. *See Castille v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (citing 20 C.F.R. § 404.1512(a)).

John H. asserts that the ALJ "played doctor" by assessing the relevant medical evidence without the assistance of a medical expert. (*See* Filing No. 10 at 15-16.) However, the Court notes that at reconsideration, the state agency consultant specifically reviewed the findings of both consultative examinations and assessed that John H. was capable of light exertional work without any further manipulative limitations. (Filing No. 8-3 at 18-20.) The ALJ did not explicitly depend on the assessment. However, her RFC findings were consistent with the assessment of the consultant who considered the only objective findings related to John H.'s carpal tunnel syndrome.

As noted above, the ALJ discussed evidence that John H. later renewed his allegations of hand symptoms during treatment with the VA. On December 2, 2016, John H. saw a nurse about increasing hand symptoms and requested the replacement of wrist braces for his carpal tunnel syndrome. (Filing No. 8-9 at 73-74.) He indicated that his previous braces had been worn out and that he had never had them replaced. (Filing No. 8-9 at 74.) However, he was taking Gabapentin and Ibuprofen, as prescribed, for the condition. *Id*. The nurse ordered replacement wrist braces, but no examination findings were documented. *Id*. As such, the ALJ confronted all the relevant evidence of record and there were no objective medical findings that were not reviewed by a medical expert. Accordingly, the Court does not find any error based on the ALJ's consideration of John H.'s carpal tunnel syndrome.

B.   **Subjective Symptom Evaluation**

John H. contends that the ALJ provided "faulty reasoning in her application of SSR 16-3p." (Filing No. 10 at 19.) While John H. indicates that the ALJ addressed the regulatory factors specified to evaluate John H.'s subjective symptoms, he contends that the ALJ's rationale for each was erroneous and failed to justify her conclusion by use of other evidence besides a lack of objective evidence. (Filing No. 10 at 19-20). Specifically, John H. asserts that the ALJ: (1) erroneously determined that John H.'s treatment was conservative, and (2) did not consider possible explanations for the level of treatment that he pursued. (Filing No. 10 at 20-21.)

As noted above, an ALJ's credibility evaluation is given considerable deference. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). "Credibility determinations will not be overturned unless they are clearly incorrect. As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citations omitted).

On March 28, 2016, SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated. Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing his "credibility." *Id*. The ruling specifies that the SSA uses "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," but continues to utilize the regulatory factors relevant to a claimant's symptoms, including daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate

9

the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *Id*. at *7-8; 20 C.F.R. § 404.1529(c)(3).

The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). The standard remains whether the ALJ's assessment was patently wrong.

Throughout the decision, the ALJ detailed the lack of objective evidence to support John H.'s subjective symptoms. (*See, e.g.*, Filing No. 8-2 at 26.) For example, despite a historical diagnosis of Parkinson's disease and back pain, the record contained limited musculoskeletal and neurological deficits. *Id*. The initial consultative examiner suggested that there was no evidence of either impairment apparent on examination. *Id*. (citing Filing No. 8-7 at 119).

Additionally, the ALJ noted that rather than detailing increased complaints, John H.'s treatment lapsed shortly after his alleged onset date. (Filing No. 8-2 at 25.) The ALJ may consider inconsistencies between the severity of symptoms reported at the hearing and those reported while seeking treatment, the failure to regularly seek treatment for those symptoms, and/or the pursuit of "routine and conservative" treatment. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005). Here, the ALJ cited to record evidence showing that John H. had once been prescribed narcotic pain medication, but after a urine screen—prior to his alleged onset date—had failed to reveal that he was taking the medication, his provider would no longer prescribe him controlled

substances. (Filing No. 8-2 at 23 (citing Filing No. 8-7 at 47).) The ALJ noted that John H. was prescribed non-narcotic Gabapentin and Cyclobenzaprine for his pain, but that he failed to return for primary care appointments, and when he did, he noted that his medications had run out and he did not have any "particular reason" for not following up. (Filing No. 8-2 at 24 (citing Filing No. 8-9 at 85).)

John H. contends that the ALJ failed to consider explanations for the lack of treatment. (Filing No. 10 at 21.) For example, John H. cites record evidence that he later explained his negative urine screen to his providers as being a consequence of three to four days of nausea and vomiting that prevented him from holding anything down. (Filing No. 8-7 at 130-31.) Regardless, the fact remains that he received almost no treatment for his back after being cut off narcotic medication, and further did not follow-up to keep his prescriptions filled for the non-narcotic medication that replaced it.

Furthermore, the ALJ did ask John H. why he had never undergone counseling or therapy at the VA. (Filing No. 8-2 at 54.) John H. testified that he was pushed around between doctors and that they did not "want to do nothing for you there. And they don't – they don't believe that you're hurting or whatever you tell them." (Filing No. 8-2 at 54-55). However, the record belied his assertions. For example, John H. pursued and received cosmetic surgery for a lipoma on his forehead. (Filing No. 8-9 at 26.) Yet, he repeatedly failed to appear for an initial evaluation for occupational therapy. (*See, e.g.*, Filing No. 8-9 at 35.) He was prescribed medications for pain, failed to take them or follow-up to have them filled, and never sought more aggressive treatment. Considering the level of deference accorded an ALJ's subjective symptom evaluation, the Court cannot conclude that the ALJ was patently wrong to infer from the record that John H.'s level of treatment did not support his allegations. Moreover, the ALJ relied on specific citations to the

record to support her findings. Accordingly, the Court does not conclude that remand is necessary for further consideration of John H.'s subjective symptoms.

## V. CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. John H.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 12/18/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
HANKEY LAW OFFICE
charleshankey@hankeylawoffice.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE
julian.Wierenga@usdoj.gov

Lu Han
SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
lu.han@ssa.gov